Please report, counsel. Your name, sir? My name is Tim Helfrich. I'm here representing the plaintiff, Julio Andino. This is a case, Your Honors, that presents two issues concerning construction of Oregon law. One of those issues is whether the term fault, as it's used in the Oregon Comparative Negligence Statutory Scheme, includes intentional or criminal misconduct. In other words, whether intentional misconduct can be compared to negligent conduct. The second question is the effect and the meaning of subsection 4 of ORS 18.480, which allows the trial court to treat two or more people as a single entity at the trial level for purposes of comparison of responsibility. Do I understand correctly this is not a settled question under Oregon law? That's true in the sense, Your Honor, that this exact configuration has never been presented to the court. As you're aware, because Mr. Lindahl is involved in it, there is a case that's in the Oregon Court of Appeals currently where that is one of the issues. That's a case that's been argued, and I believe that they're awaiting a decision about it. Whether the court reaches it or not, I don't know, but it is one of the issues that's presented in that case, Schinn v. Sunriver Preparatory School. Would there be any good reason why we shouldn't hold off deciding this case until that case is decided? I don't think so, Your Honor. I certainly think that makes sense. As I said, whether the court ultimately reaches it in that case, there's multiple issues that are raised in that appeal. But if they reach the issue, it should certainly provide additional guidance on what Oregon law is going to be on that topic. Incidentally, Your Honor, I would like to reserve three minutes for rebuttal. Sure. In any event, those two questions that we deal with under Oregon law arise in the context of a specific type of case, and the type of case we're dealing with is a key to the resolution of this issue. It's a case where a party is under a duty to protect someone else from the possibility of criminal conduct by a third party. In other words, their specific obligation is to protect the plaintiff from the risk of that kind of harm. So it arises in the case that Mr. Andina was involved in, where you have a premises owner or a person who serves alcoholic beverages who has an obligation to protect their patrons from the possibility of assault. It also arises in a variety of other contexts. The Shin case that we just talked about that's going through or is in the Court of Appeals in Oregon involved a child at a preparatory school who was subjected to sexual assault by a criminal as a result of the school's failure to exercise care in protecting her from this known threat of criminal conduct. It arises in a variety of other contexts, such as Neering v. Weber, one of the cases discussed in our briefs, where police officers failed to enforce a mandatory family abuse protection order, and as a result, the person who was protected by the order was assaulted by someone who was committing a criminal act. So in all of these cases, the very risk that the plaintiff is to be protected from is the risk of an intentional act by a third party. And the defendant is found responsible because they failed to comply with their duty. So in that context, we look at the statutory scheme. And when you look at the statutory scheme, as interpreted by the Oregon cases, and in particular Hampton Tree Farms v. Jewett, which was based upon a Supreme Court decision from 1977 called Johnson v. Tilden, when we look at that, you see that the court had to address the question of the meaning of the word fault as it was used in the statute. And in making that decision, the court determined that fault does not include intentional or criminal misconduct because that cannot be compared with negligent conduct. So both Hampton Tree Farms, Johnson v. Tilden, had to come to grips with the meaning of fault and specifically whether it could include forms of misconduct other than negligent misconduct. And the court found that it could not because of the language of the statute, a portion of ORS 18.470 that says that no new defense is being created and no defense is being abolished by that statute. And the court found that if intentional misconduct were permitted to be compared with negligent conduct, that it would have the effect of creating a new defense. And you can see that at work in this specific case because although the defendant argues that this is a different scenario, in that we are not talking about a negligent plaintiff suing an intentional wrongdoer who then uses the plaintiff's negligence as a form of comparative fault. Mr. Andino did not sue the person who committed the assault in this case. He was brought in by a third-party complaint. But the effect is exactly the same. The defendant is permitted to raise the intentional misconduct of the man who shot Mr. Andino. He's able to raise that as a defense. And the effect is reflected in the ultimate judgment because the conduct of Mr. Reese, who shot the gun, is being compared with the negligence of the camerax saloon, the defendant, and the plaintiff. And his liability was reduced by comparison of the negligence of the plaintiff and the defendant. So I'd like to reserve the rest of my time. Thank you very much, Mr. Helfrich. Good morning. Good morning. Dan Lindahl on behalf of the Tamarack Restaurant, the FLE in this matter. We ask the court to affirm the district court's judgment by holding that the district court correctly applied Oregon law by asking the jury to apportion faults among all parties, including the defendant, Tamarack, and the third-party defendant, Mr. Reese, who shot the plaintiff. Yes, Your Honor, this question is unresolved under Oregon law, although the statute we're dealing with has been on the books for almost 10 years now. Interestingly, it has not been resolved. It's working its way up, though, as I'm involved in apparently the two cases that presented. The Shin case that we mentioned in our statement of related cases was argued in December to the Oregon Court of Appeals. I anticipate a resolve soon. No, I don't know of a reason why this court shouldn't wait to see what the Court of Appeals says and take that into consideration. I believe the Court of Appeals will reach this issue in the Shin case. As I analyze the case and the various issues, it will need to get to this issue. There's other issues in that case as well. An alternative would be we could certify a question to the Oregon Supreme Court, but if you're satisfied that this issue is already teed up for an appellate decision. Yeah, there is. The certification, I certainly wouldn't have any reason to oppose that. If it's already in the works. Right, it's working its way there already through the Oregon court system. The fundamental issue here is what did the Oregon legislature intend when it enacted pretty sweeping statutory reform in 1995? The rule in Oregon, as a lot of places, was for joint and several liability. It didn't call for this apportionment of fault and an entry of judgment against each party. But in 1995, the Oregon legislature changed that and said, the trier of fact shall compare among the plaintiff, the defendant, and any third party who is liable in tort to the plaintiff. That's the way it's described in section 18.4702. Any third party who's liable in tort, that's a pretty broad description. And it would certainly encompass the gunman here, Mr. Reese. He was certainly liable in tort for his shooting of the plaintiff. And so Magistrate Judge Gelder, former trial court judge in Oregon, before moving to the federal bench said, I read Oregon law here to require this apportionment. This is consistent with the adoption of the several liability scheme. If not for this apportionment, Tamarack Steakhouse, 4% at fault according to the jury, will answer for 99% at fault under plaintiff's theory of how this fault should be allocated if you take Mr. Reese out of the picture. But neither version comes out to be very logical because the real wrongdoer is essentially judgment proof. Because in the version we have now, respective, and I realize it's a skewed scale, but your client was found four times more responsible than the plaintiff, and yet the plaintiff winds up holding 96% of the bag. Neither result is very satisfying. You're right, Your Honor. There's plainly two competing policies the legislature could have chosen. One would be the policy that the plaintiff advocates, which is that we should ensure recovery by the plaintiff and let the third-party defendants sort out between themselves. And if liability is unfairly apportioned to the restaurant, let the restaurant bear that burden. It has a right of contribution over against the third party. If they can't collect, so be it. The other policy choice is that tort liability in Oregon shall only be imposed in proportion to your actual wrongdoing. Admittedly, these are two opposite policy choices. For a long time in Oregon, the policy choice was plaintiff recovers, defendant, if you get stuck with more than your fair share, you have a right of contribution or indemnity. The legislature changed that in the 90s in response to some, what it perceived as perhaps some unfair decisions out of the Oregon Supreme Court, which held that that's what Oregon law compels. You're 1% at fault. You pay all the liability. So they changed that. What do you have to say to the argument offered up by plaintiffs that we have two different kinds of wrongdoing involved here, that your client's not being held culpable in the same fashion as being a third party in the fight, but is held culpable in a different theory, that is that it was the restaurant and bar's responsibility to try to protect against fights generally, and so that the measure here, which encompasses all wrongdoers in the same pot, doesn't produce the right measure, that the measure should be done separately for the different kinds of liability or wrongdoing theories? My response would be that's a great argument to talk to your representative or state senator about, and that in this context, if the defendant's liability arises from its failure to protect against the risk, then the legislature can carve that out. But it didn't. It just didn't. And you would have to rewrite the statute to get to that result, just as you would have to rewrite the statute in a number of ways to get to the result that the plaintiff wants here. This is just the choices the legislature makes, and this is a choice that is made. We've cited a number of cases in our brief. It seems to have been something that happened in a number of jurisdictions where there was a movement away from joint and several to a several scheme, and this interpretation of the statute that we offer is consistent with that. Otherwise, you have the Tamarack, a negligent party, being burdened with the intentional wrongdoing of Mr. Reese, the gunman, a much more culpable party, whereas if Mr. Reese were only negligent, there's no dispute that he would be answerable for his share and the restaurant would be answerable for only its share. So it's sort of counterintuitive that the restaurant can be more liable because it's only negligent and Mr. Reese was an intentional wrongdoer. As the California Court of Appeals and the Wyoming Supreme Court and the cases we've cited have dealt with this. In Washington, they've taken a different approach, which is to say we completely eliminate the whole intentional aspect of this. First, we decide what portion of the wrongdoing is attributable to the intentional acts. If that's 80%, that all goes away, and then you have an apportionment among the negligent parties of what's left. So a lot of courts that have, admittedly, statutory schemes in different states are different, so the analogies are only so apt, but it's plain that the courts that have looked at it have said that this type of apportionment is consistent with and furthers the legislature's goal of adopting a several liability scheme. One point I want to emphasize just at the end. It didn't come up in counsel's remarks, but what happens if I lose? The jury was asked to apportion fault among these three parties and gave, obviously, the vast fault to Mr. Reese. It found both the plaintiff, who had an altercation with Mr. Reese, and the restaurant to be partially at fault. What would they have done with that other 95%? Had it been a straight-up plaintiff versus restaurant? We don't know, and you can't assume that it would have been plaintiff 1%, restaurant 99%, any more than you can assume it would have been plaintiff 96%, and restaurant 4%. We don't know. So our position is that if you do disagree with Magistrate Judge Sheldrick, then there's a remand, that it needs to be a remand for a new trial where the jury is asked to apportion fault just between those two parties and not a remand for entry of judgment and an amount of all but one. Could it be four to one? Could we take the factors assigned to these two parties and throw out the other 95%? I don't think so without just outright speculating what they might have done. For these reasons, we ask that you affirm the judgment. May I answer any more questions this morning? And thank you. Thank you, Mr. Lindahl. Mr. Sheldrick, you have about three minutes left. Thank you, Judge. Let me ask you right at the outset to address the alternative possibility in terms of waiting for Oregon to speak. We have a case, I guess, that's in the system. I don't know if you're as familiar with that case, since I presume you're probably not involved in it yourself. Do you have any sense as to whether we should instead certify the question if our inclination is to wait to hear from the Oregon courts? Well, Your Honor, I think that it makes sense to await the decision of the Court of Appeals in that Shin case, and I say that because my understanding is it was argued in December, so presumably a decision on that case is not very far off. That certainly does still leave a couple of questions. That's going to be a decision by an intermediate appellate court. I presume, knowing the amount involved in that case, that somebody may be asking the Oregon Supreme Court to review it. And I would hate to see a situation where we're waiting for another year for the Oregon Supreme Court's decision on that case. But we don't know whether they would take review or not. But in any event, Your Honor, it seems to me that because of the timing of that decision, it makes eminently good sense to see what the Court of Appeals does with it. Having said that, I would submit that the counsel's view of what the legislature did in 1995 is simply wrong. If we look at how the statutory language was construed by the Oregon appellate courts before the legislative change and the fact that the legislature has made no change in the words that are critical to us, the word fault and contributory negligence in the statute, has made no change in that since the Hampton case where the Court of Appeals said very clearly intentional conduct may not be used by comparison. It's clear that that is the prevailing understanding of that word under Oregon law. Judge Clitson pointed out that either result is not very satisfying intellectually. There are problems with either way that we approach this. But I would suggest a couple of things about that. One, the method of interpreting this that we're proposing to the court is very consistent with Oregon law, both on the substance of this cause of action and on the meaning of the statute, for the reasons I've already talked about. And the argument that's made by the defense is really, in a sense, an argument for abolition of that cause of action, just dressed in different clothes. The other thing about this is that it's consistent with, it's symmetrical. The duty and the liability match. And that's what should happen. We ask that it be the case be reversed. Albert, thank you. Linda, I'll thank you as well. The case will start in just a moment. Good morning. The next case, 0335121, Shavell v. Barnhart, is submitted at this time, as is 0335122, Lowry v. Barnhart. While we're at it, I'll take care of it. Shuskin v. Ashcroft, 02374395. That case is also submitted on the briefs at this time. We'll hear argument now in 0370064, Yang v. Ashcroft. Each side has ten minutes. Good morning.
judges: Silverman, Clifton, Zapata